**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Civil Case No.**

**OASIS CAPITAL, LLC**

                    **Plaintiff,**
      **v.**

**NASON, YEAGER, GERSON,**
**HARRIS & FUMERO, P.A.**
      **and**
**BRIAN S. BERNSTEIN, ESQ.**

                    **Defendants.**
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Oasis Capital, LLC, by and through its undersigned counsel, hereby brings this

Complaint against Defendants Nason, Yeager, Gerson, Harris & Fumero, P.A. and Brian

Bernstein, Esquire, and in support thereof avers as follows:

**<u>Introduction</u>**

1. This is a legal malpractice action.  Through this Complaint, Plaintiff seeks to recover the

significant damages caused by Defendants' representation of Plaintiff in certain

investment/funding transactions.  The standard of care for an attorney representing a

Plaintiff in a secured transaction requires, at a minimum, that the attorney: ensure that the

documentation implements the negotiated terms, that the attorney advise the client

regarding the scope of the security interest granted by such documentation, and promptly

take steps to perfect the client's security interest under applicable law.  A key to making a

loan fully secured is to "perfect" it, by contemporaneously filing a UCC-1 notice of the

lien, giving the public actual or constructive notice of that loan's existence and senior

secured status. Without such a filing, the loan is subject to a myriad of attacks. With a proper filing, by operation of federal bankruptcy law, a senior secured creditor occupies a nearly unassailable position.  The filing of a UCC-1 notice is ministerial, yet critical.  Here the Defendants failed to perform their simple duty to file UCC-1 statements to perfect Plaintiff's security interests.  The Defendants repeatedly breached the standard of care, their contract with the Plaintiff and their fiduciary duties by failing to properly advise the Plaintiff, failing to properly document transactions on the Plaintiff's behalf, failing to obtain the necessary consent for pledges of collateral, and failing to perfect Plaintiff's security interest in pledged collateral.  As a direct and proximate result of these breaches, Plaintiff has suffered substantial harm, in excess of 11 Million Dollars, and remains exposed to further and continuing harm, as outlined more fully herein.

## Parties, Jurisdiction and Venue

2. Plaintiff Oasis Capital, LLC  ("Oasis") is a limited liability company incorporated in the Commonwealth of Puerto Rico, with a principal place of business at 411 Dorado Beach, East Dorado, Puerto Rico.  The sole member of Plaintiff Oasis is Adam Long, who is domiciled in, and a resident of Puerto Rico.

3. Defendant Nason, Yeager, Gerson, Harris & Fumero, P.A. ("NYGHF") is a Florida professional association, that is registered with the State of Florida Division of Corporations as a "For Profit Corporation", with its principal place of business located at Seacoast National Centre, 3001 PGA Boulevard, Suite 305, Palm Beach Gardens, FL 33410.  See State of Florida, Division of Corporation Detail by Entity for NYGHF, wherein it is indicated that NYGHF is a "For Profit Corporation", attached as Exhibit "A".

4. Defendant Brian Bernstein, Esquire ("Bernstein") is a Florida lawyer who is a shareholder of NYGHF, works at NYGHF in its Palm Beach Gardens office, and practices in NYGHF's securities and corporate departments. (Bernstein and NYGHF will be collectively referred to as "Defendants").

5. This Court has personal jurisdiction over Defendants because this action arises from professional legal services that Defendants rendered to Oasis in the state of Florida.

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the action arises between citizens of different states, and the amount in controversy is in excess of $75,000.

7. Venue is proper is proper in the Southern District of Florida under 28 U.S.C. § 1391 because a substantial part of the underlying events at issue herein took place principally in Palm Beach Gardens, Florida, where the professional legal services at issue were rendered.

## Factual Background

8. In or around May of 2020, Oasis first retained the Defendants to represent its interest in connection with a secured investment transaction, and thereafter Oasis routinely engaged Defendants to represent it in various transactional/secured investment matters, and with respect to general business matters, but no engagement letter or retainer agreement was ever issued.  See invoices from NYGHF, collectively attached as Exhibit "B".

9. At all times relevant hereto, Defendant Bernstein is/was a shareholder of NYGHF, is/was employed by NYGHF in its Palm Beach Gardens office, and all actions taken by him with respect to Oasis, outlined fully herein, were within the scope and course of his

employment with NYGHF, and thus, NYGHF is vicariously liable for and, under respondeat superior, is responsible for the acts and omissions of its attorney, Defendant Bernstein.

10. Defendants represented Oasis in several significant transactions, in which the Defendants' representation caused Oasis substantial damage, including specifically, the Molecular Data, Inc., Generex Biotechnology Corporation, and Fact Molecular Data Inc. transactions, as will be described more fully below.  See Ex. B.

**The Molecular Data, Inc. Claim**

11. In or around March of 2021 Oasis retained Defendants to represent it in connection with an equity line of credit transaction with Molecular Data Inc. ("MKD"), and to draft all documents associated therewith.

12. MKD is a is a chemical e-commerce platform based in Shanghai, China, and is incorporated in the Cayman Islands.

13. The negotiated transaction, evidenced by a written term sheet, entitled Oasis to a "Commitment Fee" and the written term sheet provided, with respect to the "Commitment Fee" that Oasis was to receive "Common Stock equal to 2% of the Offering Amount [defined in the term sheet as $50,000,000] with piggyback registration rights". See the Oasis/MKD Term Sheet, attached as Exhibit "C".

14. Because MKD is a foreign company, any MKD shares provided to Oasis, including the Common Stock to be provided as part of the Commitment Fee, would be converted to American Depository shares.  Each MKD American Depositary Share, represented three (3) MKD Class A ordinary Common Stock shares, par value US $0.00005 per share, and thus were based on a 3/1 ratio.

15. Defendants were provided the written term sheet between Oasis and MKD and were retained to, and did, in fact, draft all the transactional documents associated with the Oasis/MKD equity line of credit transaction, including the Equity Purchase Agreement.

16. Defendants were specifically instructed to draft the MKD documents to conform with the terms outlined in the written term sheet, which was provided to them.

17. Pursuant to the agreed upon Term Sheet, Oasis was entitled to commitment shares of "Common Stock equal to 2% of the Offering Amount", which is equal to MKD Common stock valued at $1,000,000, and amounted to *3,125,001 MKD Common Stock Shares,* or *1,041,667 MKD American Depository Shares*.   See Ex. "C".

18. Despite Oasis's instruction and Defendants' assurances of the same, the Defendants negligently drafted the Equity Purchase Agreement by misstating therein the number of Commitment Shares Oasis was to receive, improperly calculating the Commitment shares based on the American Depository 3/1 ratio but referring to them as Common Stock.  A true and correct copy of the MKD Equity Purchase Agreement is attached as Exhibit "D".

19. Specifically, the Equity Purchase Agreement drafted by the Defendants provides in relevant part:

**"Commitment Shares" means *1,041,667 shares of Common Stock* issued by the Company to the Investor pursuant to Section 6.5.**
**….**
**Section 6.5 ISSUANCE OF COMMITMENT SHARES. In consideration for the Investor's execution and delivery of, and performance under this Agreement, the Company shall cause the Transfer Agent to issue the Commitment Shares to the Investor on the Execution Date. For the avoidance of doubt, all of the Commitment Shares shall be fully earned as of the Execution Date, and the issuance of the Commitment Shares is not contingent upon any other event or condition, including, without limitation, the effectiveness of the Registration Statement or the Company's submission of a Put Notice to the Investor and irrespective of any termination of this Agreement. The Company shall include on any registration statement filed with the SEC all Commitment Shares. Of the Commitment Shares,**

5

**740,740 shares ("Prior Agreement CS") should have been issued in connection with the Prior Agreement (defined below). The holding period for the Prior Agreement CS shall tack back to the execution date of that certain Equity Purchase Agreement dated March 17, 2021 (the "Prior Agreement") by and between the Company and the Investor, which is hereby terminated. The Company hereby confirms that it will not take a position to the contrary.**

See Ex. D (emphasis added).

20. Thus, the Equity Purchase Agreement drafted by the Defendants misstated the number of Commitment Shares that Oasis was to receive, providing that Oasis was to receive *1,041,667 shares of Common Stock* as Commitment Shares, when it should have received *3,125,001 shares of MKD Common Stock*.

21. The written term sheet provided that Oasis was to receive a commitment fee worth 2% of the $50,000,000 Offering Amount in the form of MKD Common Stock, and Oasis specifically provided Defendants the MKD Term Sheet and specifically directed Defendants to draft the Equity Purchase Agreement in accordance therewith, but the Equity Purchase Agreement negligently and incorrectly drafted by Defendants, and executed by the parties thereto, provided in error that Oasis was to receive Commitment Shares of *1,041,667 shares of Common Stock* issued by MKD (this is the correct amount if the shares were American Depository Shares), when it should have provided that Oasis was to receive Commitment Shares of *3,125,001 shares of Common Stock* issued by MKD**.** See Exs. C and D.

22. When Oasis alerted the Defendants about the error, Defendants failed to take steps to mitigate the harm and instead represented to, and assured Oasis that, notwithstanding the terms of the Equity Purchase Agreement that Defendants drafted and the Entire Agreement provision contained therein at Section 10.7, that MKD would provide the Commitment Shares negotiated and agreed upon in the Term Sheet.

23. Defendants had no basis to make this representation and provide said assurances, and subsequently, MKD refused to provide any Commitment Shares beyond the ***1,041,667 shares of Common Stock*** specifically outlined in the Equity Purchase Agreement.

24.  On September 24 and 27, 2021 Oasis sold the 1,041,667 MKD Commitment Shares it had received pursuant to the improperly drafted Equity Purchase Agreement, which had been converted to 347,222 American Depository Shares, for a total of $99,266.04.  Had Defendants properly drafted the Equity Purchase Agreement to accurately account for the number of Commitment Shares, Oasis would have received the 3,125,001 shares of Common Stock of MKD to which it was entitled under the MKD Term Sheet, and had those shares been sold on September 24 and 27, 2021, Oasis would have received $297,708.43.  Thus, as a direct and proximate result of the Defendants' acts, omissions, and misstatements as to the number of Commitment Shares in the Equity Purchase Agreement, Oasis did not receive 2,083,334 MKD coon stock shares to which it was entitled, and suffered actual losses of $198,442.39**.** Had the transaction been properly documented by the Defendants, as Oasis instructed, and as Oasis and MKD intended, Oasis would not have suffered these losses.

**The Generex Loans**

***The February Loan and Note***

25. In or around February of 2021, Oasis engaged Defendants to represent its interests in connection with a secured transaction with Generex Biotechnology Corporation ("Generex").

26. The Defendants drafted all of the documents associated with the Generex transactions.

27. Oasis and Generex entered into a certain Securities Purchase Agreement (the "First SPA") dated February 17, 2021, which was drafted by the Defendants.

28. In connection with the First SPA, Generex and Oasis also entered into a certain Convertible Promissory Note dated February 7, 2021 in the amount of $1,689,500, plus interest and fees (the "February Note"), which amount Generex agreed to pay to Oasis on or before February 17, 2022 in accordance with and subject to the terms and conditions thereof.  The Generex February Note is attached hereto as Exhibit "E".

29. The Generex February Note was drafted by the Defendants.

30. The February Note accrues interest at a rate of 8% per annum. See Ex. E.

31. The February Note provided that any amounts not paid prior to or on the Maturity Date (as defined therein) would accrue interest at the lesser of (i) 24% per annum or (ii) the maximum amount allowed by law.  See Ex. E.

32. Section 3.1 of the February Note provides that it would be an Event of Default for Generex to fail "to pay the principal hereof or interest thereon when due on this [February Note], whether at the Maturity Date, upon acceleration, or otherwise."  See Ex. E, at Section 3.1.

33. Section 3.5 of the February Note further provides that it would be an Event of Default for Generex to "make an assignment for the benefit of creditors, or apply for or consent to the appointment of a receiver or trustee for it or for a substantial part of its property or business, or such a receiver or trustee shall otherwise be appointed." See Ex. E, at Section 3.5.

34.  The February Note provides that, upon an Event of Default of the type specified in Sections 3.1 and/or 3.5:

**solely upon written demand by [Oasis], this [February Note] shall become immediately due and payable and [Generex] shall pay to [Oasis], in full satisfaction of its obligations hereunder, an amount equal to 125% (plus an additional 5% per each additional Event of Default that occurs hereunder), multiplied by the then outstanding entire balance of this [February Note] (including principal and**

accrued and unpaid interest) plus Default Interest from the date of the Event of Default, if any, plus any amounts owed to [Oasis] pursuant to Section 1.3(g) . . . (collectively, in the aggregate of all of the above, the "Default Amount"), and all other amounts payable hereunder shall immediately become due and payable, all without demand, presentment or notice, all of which hereby are expressly waived, together with all costs, including, without limitation, legal fees and expenses, of collection, and [Oasis] shall be entitled to exercise all other rights and remedies available at law or in equity.

See Ex. E.

35. In addition, the February Note included, in relevant part, the following clause:

***This Note also creates a lien on and grants a security interest in all of the Company's (including its subsidiaries) Accounts, Goods, Inventory, Equipment, Investment Property, General Intangibles, Instruments, Documents, and all other assets and personal property of the Company, wherever located, together with all the proceeds now or hereafter arising in connection therewith (the "Collateral").*** **This Note shall also constitute a security agreement under the New York Uniform Commercial Code or other law applicable to the creation of liens on personal property. . . .** ***The Company acknowledges and agrees that the Holder shall have the right to file a UCC-1 financing statement and any renewals and continuations thereof or other documents as the Holder may reasonably require with respect to this security interest.*** **If a default occurs under this Note, the Holder shall have all rights and remedies of a secured party under the New York Uniform Commercial Code. . . .**

Ex. E, p. 2 (emphasis added).

36. Notwithstanding that the February Note specifically granted Oasis a security interest in all of Generex and "***its subsidiaries*** Accounts, Goods, Inventory, Equipment, Investment Property, General Intangibles, Instruments, Documents, and all other assets and personal property… together with all the proceeds now or hereafter arising in connection therewith", and defined the foregoing as the "Collateral" for the loan, the Defendants never had Generex's Subsidiaries execute ***any*** document granting to Oasis a security interest in their assets, never identified the owner or rights-holder of the "Collateral", and never obtained anything from Generex's Subsidiaries providing their consent to the pledge of the Collateral, such as a Collateral Pledge Agreement.

9

37. Further, despite the February Note's express grant to Oasis of the right to file a UCC-1 financing statement to perfect its security interest in Generex's and its Subsidiaries' assets, and Defendants' express representations to Oasis that it would take the necessary steps to ensure that Oasis's security interests were properly documented and perfected and Oasis's specific instruction to Defendants to ensure that a proper UCC-1 financing statement was timely filed perfecting Oasis's security interests in the assets of Generex and its Subsidiaries, unbeknownst to Oasis, Defendants failed to prepare or file such a financing statement on Oasis's behalf.

*The July Loan and Note*

38. Unaware of the Defendants' prior failure to document and perfect Oasis's security interest in the assets of Generex and its Subsidiaries, Oasis again retained and relied on the Defendants in connection with a second loan to Generex in the principal amount of $1,085,000.00, plus interest and fees, pursuant to a Secured Convertible Promissory Note issued on July 8, 2021 (the "July Note") and other instruments including a Securities Purchase Agreement.  The Generex July Note is attached hereto as Exhibit "F".  (The July Note together with the February Note, are collectively referred to herein as the "Generex Notes").

39. Defendants drafted all the documents associated with the July Note.

40. Other than the principal amount of the loan, the February Note and July Note were virtually identical.  Compare Ex. E and Ex. F.

41. As with the February Note, in the July Note, drafted by the Defendants, Generex agreed to repay Oasis on or before July 8, 2022 in accordance with and subject to the terms and conditions thereof.  See Ex. F.

42. The July Note also accrues interest at a rate of 8% per annum. See Ex. F.

43. The July Note also accrues interest and provides that any amounts not paid prior to or on the Maturity Date (as defined therein) will accrue interest at the lesser of (i) 24% per annum or (ii) the maximum amount allowed by law.

44. Section 3.1 of the July Note also provides that it is an Event of Default for Generex to fail "to pay the principal hereof or interest thereon when due on this [July Note], whether at the Maturity Date, upon acceleration, or otherwise."  See Ex. F, at Section 3.1.

45. Section 3.5 of the July Note also provided that it is an Event of Default for Generex to "make an assignment for the benefit of creditors, or apply for or consent to the appointment of a receiver or trustee for it or for a substantial part of its property or business, or such a receiver or trustee shall otherwise be appointed."  See Ex. F, at Section 3.5.

46. The July Note provided that, upon an Event of Default of the type specified in Sections 3.1 and/or 3.5,

**solely upon written demand by [Oasis], this [February Note] shall become immediately due and payable and [Generex] shall pay to [Oasis], in full satisfaction of its obligations hereunder, an amount equal to 125% (plus an additional 5% for each additional Event of Default that occurs hereunder), multiplied by the then outstanding entire balance of this [February Note] (including principal and accrued and unpaid interest) plus Default Interest from the date of the Event of Default, if any, plus any amounts owed to [Oasis] pursuant to Section 1.3(g) . . . (collectively, in the aggregate of all of the above, the "Default Amount"), and all other amounts payable hereunder shall immediately become due and payable, all without demand, presentment or notice, all of which hereby are expressly waived, together with all costs, including, without limitation, legal fees and expenses, of collection, and [Oasis] shall be entitled to exercise all other rights and remedies available at law or in equity.**

See Ex. F.

47. The July Note contained the same granting clause that was included in the February Note, and provided in relevant part:

> This Note also creates a lien on *and grants a security interest in all of the Company's (including its subsidiaries) Accounts, Goods, Inventory, Equipment, Investment Property, General Intangibles, Instruments, Documents, and all other assets and personal property of the Company, wherever located, together with all the proceeds now or hereafter arising in connection therewith (the "Collateral").* This Note shall also constitute a security agreement under the New York Uniform Commercial Code or other law applicable to the creation of liens on personal property. . . . *The Company acknowledges and agrees that the Holder shall have the right to file a UCC-1 financing statement and any renewals and continuations thereof or other documents as the Holder may reasonably require with respect to this security interest.* If a default occurs under this Note, the Holder shall have all rights and remedies of a secured party under the New York Uniform Commercial Code. . . .

See Ex. F, at pg. 2 (emphasis added).

48.  Once again, notwithstanding that the July Note specifically granted Oasis a security interest in all of Generex and *its subsidiaries* "Accounts, Goods, Inventory, Equipment, Investment Property, General Intangibles, Instruments, Documents, and all other assets and personal property… together with all the proceeds now or hereafter arising in connection therewith", and defined the foregoing as the "Collateral" for the loan, the Defendants never had Generex's Subsidiaries execute *any* document granting to Oasis a security interest in their assets, never identified the owner or rights-holder of the "Collateral", and never obtained anything from Generex's Subsidiaries providing their consent to the pledge of the Collateral, such as a Collateral Pledge Agreement.

49. Moreover, despite the July Note's express grant to Oasis of the right to file a UCC-1 financing statement to perfect its security interest in Generex's and its Subsidiaries' assets, Defendants' express representations to Oasis that it would take the necessary steps to ensure that Oasis's security interests were documented and perfected and Oasis's specific instruction to Defendants of the same, unbeknownst to Oasis, the

Defendants failed to prepare or file a financing statement on Oasis's behalf for the Collateral, either as to Generex's assets or Generex's Subsidiaries' assets, with respect to either the February Note or the July Note.

50. Generex had committed multiple events of default under the February and July Notes, and on March 30, 2022 Oasis issued a notice of default to Generex in accordance with the terms of the Generex Notes, and as a result, the full principal balance of each of the February Note and the July Note became immediately due, together with accrued interests and fees, costs and other expenses in connection therewith.  See Oasis Notice of Default dated March 30, 2022, attached as Exhibit "G".

### *The Receivership*

51. On November 8, 2021, a judgment creditor of Generex, Three Brothers Trading, LLC d/b/a Alternative Execution Group ("AEXG"), filed a motion in the United States District Court for the Southern District of New York, seeking the appointment of a receiver over Generex and its assets.  See Three Brothers Trading, LLC d/b/a Alternative Execution Group v. Generex Biotechnology Corp., C.A. No. 18-CV11585 (KPF) (S.D.N.Y.) [Doc. Nos. 123-125] (the "Receivership Motion"), attached collectively as Exhibit "H".

52. Prior thereto, but unbeknownst to Oasis, AEGX sought to have Generex's other unsecured creditors join with it to institute an involuntary bankruptcy proceeding against Generex pursuant to Section 303 of the Bankruptcy Code, but AEGX was unable to recruit or obtain the acquiescence of the required three (3) unsecured creditors, and therefore was unable to institute an involuntary bankruptcy proceeding against Generex.

53. In January 2022, while the Receivership Motion was pending, Oasis was alerted for the first time that its liens on the Collateral outlined the February and July Generex Notes

had not been perfected because the Defendants had failed to file UCC-1 financing statements for either the February or July Generex Notes.

54. As a result, Oasis swiftly retained successor counsel to prepare and make such a filing. On January 25, 2022 Oasis's successor counsel filed a UCC-1 financing statement with the Delaware Secretary of State, but only as to Generex's assets (Filing No. 2022 0669879), because Defendants never had Generex's Subsidiaries execute any document granting to Oasis a security interest in their assets. The UCC-1 Financing statement covering the Generex Notes is attached hereto as Exhibit "I".

55. Once AEXG learned of Oasis's UCC-1 filing, it used the existence of Oasis's lien as further support for the appointment of a receiver, and argued that the receiver should have the authority to put Generex into bankruptcy.  See Transcript of Hearing dated April 6, 2022, p. 10, attached hereto as Exhibit "J".

56. At a hearing before the Southern District of New York Court on April 6, 2022 on AEXG's Receivership Motion, AEGX's counsel stated in relevant part:

**it is AEGX's position that Oasis has perfected its lien within the last 90 days, which under the bankruptcy code, could potentially be avoided, which would render Oasis, after motion practice, [a] general unsecured creditor and in line with essentially everyone else.**

**And its AEXG's belief that many of the tactics that are happening or the arguments that are being made and the efforts to amend the proposed receiver order are efforts to avoid the filing of bankruptcy for exactly that reason…**

See Ex. J, at p. 10, lines 15-24.

57. Oasis's successor counsel made the following argument in response:

**..an involuntary bankruptcy proceeding under Section 303 of the code could be filed by three creditors, unsecured creditors having undisputed, uncontingent claims and there are, as the Court probably knows, those strict requirements, and if an involuntary filing is done improperly, there are serious penalties, including punitive damages in a light that can be levied against parties that file it improperly.**

**One of our concerns, which some of you are cognitive, Three Brothers [AEXG] has brought out, is this really, this proposed receivership order is an end-run around Section 303 requirements, not only in terms of the numerosity requirement, because they can't meet that, but in terms of avoiding the repercussions that would occur if they improperly filed for improper purpose. So they can't simply shift the burden of that filing upon a receiver to do that dirty work. They either have to do an involuntary filing or management at the company files a bankruptcy. Courts have spoken to this. It can't be for the purpose of doing an end-run around the bankruptcy code.**

**And we would say your Honor, just if you look at the letters that have been sent and even the comments that are made today, the focus is on the timing of the receivership order and making sure this gets in place before April 25. That's because if they can't avoid the security interests through a receivership, which is what we think the pro rata is all about, initially anyways, if they can't do that, then they are eager to have a receiver file for bankruptcy for the purpose of using section 547 of the code to try and avoid our [Oasis's] security interest as preference. . . . "**

See Ex. J, at p. 34, line 13 to p. 35, line 17.

58. On April 11, 2022, the United States District Court for the Southern District of New

York granted AEXG's Receivership Motion and Ordered, in relevant part that:

**Ryniker Consultants, LLC [the "Generex Receiver"] is appointed Receiver of all [Generex] property, including without limitation all real, personal, and intangible property, including without limitation accounts, intellectual property, and legal claims and defenses (and any related privileges), belonging to Generex in title and equity,  which includes, for the avoidance of doubt Generex's interest in any entities, including any entities that are identified after the date hereof, and Generex's interests, equity, shares of stock, and accounts receivable including those identified by Generex in response to the information subpoena served upon it (see Alter Declarations Exhibits D and E), which includes Generex's shares in, and/or investment values due from, NuGenerex Diagnostics (HDS), Antigen Express (NGIO), Veneto Holdings, LLC, Olaregen Theraputix, Inc., Regentys Corporation, MediSource, Pantheon, Generex Pharmaceuticals (Canada), and Generex Bermuda, as well as all bank accounts held by Generex, NuGenerex Distribution Solutions, LLC,  NuGenerex Distribution Solutions 2, LLC, GNBTELC, LLC, Rapport Services, LLC, Nugenerex Immuno-Oncology, Inc., Nugenerex Diagnostics LLC, Nugenerex Surgical Holdings, LLC, Olaregen Theraputix, Inc., Regentys Corporation, NugenHealth LLC, and Nugenerex Health, LLC, and the proceeds of any of the foregoing (excluding any property exempt from application to the satisfaction of money judgments under CPLR 5205 and 5206), all subject to valid and perfected existing liens, claims, and encumbrances on the foregoing (collectively the "Receivership Assets" and, together with the rights relating or appurtenant thereto, the "Receivership Estate") for the purposes of liquidating the**

**Receivership Assets to promptly satisfy creditors of Generex and is authorized and directed to…**..

The Court's April 11, 2022 Order granting the Receivership Petition and Ordering the appointment of a Receiver is attached hereto as Exhibit "K".

59. Over the course of the Southern District of New York proceeding, Oasis was forced to bear significant attorneys' fees and costs addressing and resisting AEXG's efforts to avoid Oasis's liens.

*The Involuntary Bankruptcy*

60. Ultimately, it was unclear whether the Generex Receiver would file a bankruptcy petition within 90 days from the date Oasis perfected its liens through successor counsel on January 25, 2022.

61. As a result, on April 23, 2022, AEGX, GS Capital Partners, LLC, BHP Capital NY, Inc., Beijing Youfeng Biological Technology Co., Ltd. and Bedford Capital Group LLC filed an involuntary petition as to Generex for relief under chapter 7 of title 11 of the United States Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida (the "Generex Involuntary Bankruptcy").  The Generex Involuntary Bankruptcy Petition is attached hereto as Exhibit "L".

62. Based on the statements of AEXG and another petitioning creditor in the Southern District of New York Court proceeding, it became immediately apparent that the unsecured creditors of Generex intended to press for the Bankruptcy Trustee to file an action to avoid Oasis's liens as preferential transfers under section 547 of the Bankruptcy Code.

63. Oasis holds the only known secured claim against Generex.

16

64. On October 28, 2022 Oasis filed its proof of claim in the Generex Involuntary

Bankruptcy.  Oasis's Proof of Claim in the Generex Involuntary Bankruptcy, with Rider

to Proof of Claim, is attached as Exhibit "M".

65. By this Proof of Claim, Oasis asserted a secured claim in the amount of no less than

Nine Million Eight Hundred Ninety Two Thousand Two Hundred Six Dollars and Six

Cents ($9,892,206.06) plus interest, fees (including but not limited to attorneys' fees),

costs and other charges which continue to accrue against Generex, calculated through

June 5, 2022 (the day before the date that the Court entered the order for relief in the

Bankruptcy Case) as follows:

**The February Note**

Outstanding Principal through 6/5/2022: $1,093,836.30
Outstanding Interest (24%) through 6/5/2022: $769,345.08
Damages, fees, and costs through 6/5/2022: $3,736,251.64

     **Total February Note:**     **$5,599,433.02**

 **The July Note**

Outstanding Principal through 6/5/2022: $1,085,000.00
Outstanding Interest (24%) through 6/5/2022: $260,400.00
Damages, fees, and costs through 6/5/2022: $2,947,373.04

     **Total July Note:**     **$4,292,773.04**

**Total For the February and July Generex Notes:**     **$9,892,206.06**

See Ex. M, at Proof of Claim, paragraph 9, and Rider paragraph 21.

66. In the Proof of Claim, Oasis reserved all rights, claims, counterclaims, causes of actions,

and defenses that Oasis has or may have with respect to this Proof of Claim or the

Generex Notes and Securities Purchase Agreements, and its expressly preserved its

rights to file additional proofs of claim, and/or seek additional damages or immediate

payment of any amounts owed under any of the Generex Notes, Securities Purchase

Agreements, and reserved the right to amend, clarify, modify, supplement, or otherwise revise the Proof of Claim.  See Ex. M, at Rider paragraphs 23-25.

67. The trustee in the Generex Involuntary Bankruptcy has two major powers to attack security interests. They are the "hypothetical lien creditor" power provided by Bankruptcy Code 544(a)(1), and the power to avoid preferences provided by Bankruptcy Code 547.

68. The latter power under Bankruptcy Code 547 permits the trustee in many cases to avoid security interests which are either acquired by the secured party to secure a pre-existing debt, received within 90 days before bankruptcy on account of antecedent debt, or which are perfected more than ten days after they attach, and in that case the Bankruptcy Code deems the delay in perfection to be a delay in creation of the security interest, and the security interest is deemed to have been given after the debt arose, even though in reality it may have been given contemporaneously, and thus is deemed to be for antecedent debt.  If the delayed perfection occurs within 90 days before the petition is filed, the security interest will likely be avoided as a preference.

69. The possibility of a security interest being avoided in a debtor's bankruptcy proceeding makes it extremely hazardous for the secured party, here Oasis, to delay in perfecting its security interest, which occurred with Generex as a direct and proximate result of the Defendants' acts and omissions.

70. The Trustee in the Generex Involuntary Bankruptcy has indicated that it will be seeking to avoid Oasis's liens as preferential transfers under Bankruptcy Code 547, because of the delay in filing the Generex UCC-1 financing statement, which was filed on January 25, 2022, and within 90 days of the Generex Involuntary Bankruptcy.

71. Specifically in the Trustee's October 14, 2022 Motion For Entry Of An Order (I) Approving

Stalking Horse Bid And Stalking Horse EPA, (II) Approving Bid Procedures And Bid

Protections In Connection With The Sale Of Debtor's Equity In Two Subsidiaries, (III)

Approving The Form And Manner Of Notice Of Sale, (IV) Scheduling An Auction And Sale

Hearing And (V) Approving The Sale Of The Equity Free And Clear Of Liens, Claims, And

Encumbrances (the Trustee's October 14 Motion"), the Trustee avers, in relevant part as follows:

**40. The Trustee seeks the entry of an Order, substantially in the same form as the proposed order attached hereto as Exhibit 2, authorizing the Trustee to sell and convey the Equity free and clear of the Liens and Interests, including but not limited to the interest held by Oasis Capital, LLC ("Oasis") by reason of the UCC-1 Financing Statement filed on January 25, 2022 with the Delaware Secured Transaction Registry under UCC Filing No. 2022 0669879 ("Oasis UCC-1").**

**41. The Trustee requests that the Order further provide that the Liens and Interests shall attach to the proceeds of the sale of the Equity in the order of their priority, with the validity, force and effect that they had as of the Petition Date, if any, against the Equity, subject to the rights, claims, defenses and objections of the Trustee and all interested parties with respect to such liens, so that the purchaser of the Equity shall take the Equity free of all the Liens and Interests.**

**42. Section 363(f) of the Bankruptcy Code authorizes the Trustee to sell property Of the estate free and clear of any liens, claims or encumbrances if one of the following is met: (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents, (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property, (4) such interest is in bona fide dispute or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.**

**43. The language of Section 363(f) is in the disjunctive, so that a sale free and clear of interests can be approved if any of the aforementioned conditions is met. *In re Heine*, 141 B.R. 185, 189 (Bankr. D.S.D. 1992); *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988).**

**44. <u>The Trustee believes that Section 363(f)(4) applies, as the purported lien of Oasis is the subject of a bona fide dispute. The Oasis UCC-1 was filed, and thus its security interest was perfected, less than 90 days before the Petition Date. Accordingly, the lien is subject to avoidance as a preference.</u>**

19

See the Trustee's October 14 Motion, at paragraphs 41-44 (emphasis added), attached hereto as Exhibit "N".

72. A timely UCC-1 filing by the Defendants would have foreclosed any argument that Oasis's security interest was voidable under Section 547 of the Bankruptcy Code.

73. If Oasis's liens are avoided as preferential transfers in the Generex Involuntary Bankruptcy, as the Trustee has indicated, Oasis's claim will be deemed unsecured, and Oasis will not receive any meaningful recovery from Generex or in the Generex Involuntary Bankruptcy, and certainly not the $9,892,206.06 plus additional interest, fees and costs which continue to accrue, that it should and would have been entitled to if Defendants had properly prepared and timely filed the Generex UCC-1 financing statement, which they assured Oasis they would, but did not.

74. As of October 30, 2022, the amounts owed to Oasis under the February and July Generex Notes is Ten Million Eight Hundred Ninety Six Thousand Four Hundred Sixty Three Dollars and Sixty Cents ($10,896,463.60) plus interest, fees (including but not limited to attorneys' fees), costs and other charges which continue to accrue, calculated as follows:

**February Note as of 11/30/2022**

Outstanding Principal as of 11/30/22: $1,093,836.30
Outstanding Interest (24%) as of 11/30/22: $1,381,254.89
Damages, fees, costs as of 11/30/22: $3,736,251.64

**Total February Note: $6,211,342.83**

**July Note as of 11/30/2022**

Outstanding Principal as of 11/30/22: $1,085,000.00
Outstanding Interest (24%) as of 11/30/22: $652,747.69
Damages, fees, costs as of 11/30/22: $2,947,373.04

**Total July Note: $4,685,120.73**

**The FCTI Claim**

75. As with the Generex Notes, Oasis retained the Defendants to represent its interests in connection with a secured loan transaction with Fact Molecular Data Inc. ("FTCI").

76. Once again, the Defendants failed to perfect Oasis's security interest by filing a financing statement.

77. Oasis was then forced to retain separate counsel to prepare and file the financing statement, and incurred costs relating to the same.

78. Oasis continues to review and investigate the full scope of harm arising from the Firm's failure to properly document and perfect Oasis's rights against FCTI.

79. At all relevant times, Oasis relied on the guidance and advice of Defendants, and depended upon Defendants to appropriately draft the transactional documents in the Generex, MKD and FCTI transactions, to properly and timely file the necessary documents to perfect Oasis's security interest in those transactions, to advise Oasis on its ownership and/or entitlement to money and/or warrants and/or shares thereunder, to protect Oasis's interests, and to take steps to ensure ownership and/or entitlement and/or repayment, and to maximize Oasis's returns on its investments.

80. The Defendants fell below the standard of care and breached their contractual and fiduciary duties to Oasis by failing to timely file the Generex and FCTI UCC-1 financing statements and perfect Oasis' s security interests, and by improperly drafting the MKD transactional documents such that they evidenced the intent of the parties.

## COUNT ONE
## PROFESSIONAL NEGLIGENCE/LEGAL MALPRACTICE
## <u>Oasis v. Defendant Bernstein</u>

81. The allegations of paragraphs 1-80 are incorporated herein by reference, as if set forth at length herein.

82. Defendant Bernstein was engaged to and did represent Oasis with respect to the drafting and implementation of the Generex Loans and Notes, the MKD equity line of credit transaction, and the FCTI Loan and Notes.

83. Defendant Bernstein had a duty to exercise the ordinary level of skill, diligence and care of a competent practitioner in this jurisdiction, i.e., to have and employ the reasonable level of skill and knowledge commonly possessed by a member of the bar in structuring, implementing, and completing secured loan transactions, and to provide non-negligent legal representation consistent with the professional standard of care.

84. Defendant Bernstein failed to conform his conduct to the standard of care required and breached his duties to provide competent legal services by: (1) failing to have Generex's Subsidiaries execute a document granting to Oasis a security interest in their assets as provided for in the Generex Notes; (2) failing to file UCC-1 financing statements when the Generex Notes and Security Agreements were executed, and when the FCTI Note and Security Agreement was executed; (3) failing to have in place procedures to ensure that Oasis's security interests in those transactions were properly perfected; (4) failing to independently discover his mistakes in not securing Oasis' interests in Generex's and it's Subsidiaries' assets and not perfecting them by filing the UCC-1 financing statements, which omissions Oasis only learned about months later when Generex's unsecured creditors sought to have a receiver appointed, and within ninety (90) days of Generex's unsecured creditors filing the Generex Involuntary Bankruptcy; and (iv)

negligently drafting the MKD Equity Purchase Agreement, such that it was not in conformance with the written terms the parties had agreed upon and provided Oasis Commitment Shares worth only a fraction of the value that Oasis was entitled.

85. As a direct and proximate result of Defendant Bernstein's negligence, Oasis did not receive the MKD commitment Shares to which it was entitled, Oasis' interests in Generex's Subsidiaries' assets were neither secured nor perfected, and it is likely that Oasis will not obtain the secured loans it had negotiated with Generex.

86. Had Defendant Bernstein obtained Gnerex's Subsidiaries' consent and agreement to the pledge of their assets, and timely filed the Generex UCC-1 financing statements, Oasis would indisputably have a secured priority interest that would enable it to recover all amounts included in its proof of claim, $9,892,206.06 plus accruing interest and fees, and, conversely there could be no challenge to Oasis's security interest, as a preference or otherwise.

87.  Had Defendant Bernstein properly drafted the MKD transactional documents, The Equity Purchase Agreement would have reflected the agreement of the parties as outlined in their written Term Sheet, and would have provided that Oasis receive Commitment Shares of 3,125,001 Common Stock of MKD, rather than the 1,041,667 shares of Common Stock incorrectly provided for therein.

88.  Defendant Bernstein's negligence, including, but not limited to failing to have Generex's Subsidiaries execute documents granting to Oasis a security interest in their assets and failing to file the Generex UCC-1 financing statements, was the direct and proximate cause of Oasis's position in the Generex Involuntary Bankruptcy being compromised and diminished, and has resulted in Oasis suffering significant and substantial damages in excess of 11 Million Dollars.

89. Defendant Bernstein's negligence, including, but not limited to, improperly drafting the MKD Equity Purchase Agreement in accordance with the agreed upon terms as outlined in the Term Sheet provided to the Defendants, was the direct and proximate cause of Oasis suffering a significant loss of MKD Commitment Shares, to which it was entitled, and has resulted in Oasis suffering significant and substantial damages, including actual losses of $198,442.39.

90. But for the Defendant Bernstein's negligence in failing to have Generex's Subsidiaries execute documents granting to Oasis a security interest in their assets, and failing to file the UCC-1 financing statements with respect to the Generex Notes and the FCTI transaction, Oasis's interests in Generex would have been perfected, there would have been sufficient Collateral to cover the amounts owed by Generex under the Notes, and now it will likely be an unsecured creditor as the secured interests will likely be avoided as preferences, it would have avoided the substantial legal fees it incurred in the Southern District of New York Receivership Proceeding and in the Generex Involuntary Bankruptcy, and in filing the Generex and FCTI UCC-1 financing statements.

91. But for the Defendant Bernstein's negligence in drafting the transactional documents in the MKD equity line transaction, Oasis would have received the substantial Commitment Shares that it had negotiated and was entitled to, and instead received significantly less Commitment Shares, which had significantly less value as described above.

92. As a result of Defendant Bernstein's professional negligence, Oasis has been damaged in an amount to be determined at trial, in an amount in excess of $11 Million Dollars.

WHEREFORE, Plaintiff Oasis Capital, LLC hereby demands judgment against the Defendants, jointly and severally, for money damages, consequential damages, pre- and

post-judgment interest, court costs, attorneys' fees, disgorgement of all  amounts paid to

Defendants, and such other and further relief as this Court deems just and proper.

<div align="center">

**COUNT TWO**
**PROFESSIONAL NEGLIGENCE/LEGAL MALPRACTICE**
**Oasis v. NYGHF**

</div>

93. The allegations of paragraphs 1-80 are incorporated herein by reference, as if fully set

   forth at length herein.

94. NYGHF specializes in corporate and business transactions, lender representation and

   securities, and its attorney, Defendant Bernstein held himself and the firm out as so

   specializing. In performing the subject legal services outlined above with respect to the

   MKD, Generex and FCTI transactions, it owed Oasis a duty to perform its legal services

   with the specialized skill and knowledge of law firms who specialize in these areas in

   the State of Florida.

95. As set forth above, NYGHF negligently breached its duty of care in the performance of

   its legal services for Oasis by: (1) failing to have Generex's Subsidiaries execute a

   document granting to Oasis a security interest in their assets as provided for in the

   Generex Notes; (2) failing to file UCC-1 financing statements when the Generex Notes

   and Security Agreements were executed, and when the FCTI Note and Security

   Agreement was executed; (3) failing to have in place procedures to ensure that Oasis's

   security interests in those transactions were properly secured and perfected; (4) failing to

   independently discover Defendant Bernstein's mistakes in failing to have Generex's

   Subsidiaries execute a document granting to Oasis a security interest in their assets as

   provided for in the Generex Notes, failing to file the UCC-1 financing statements, which

   omissions Oasis only learned about months later when Generex's unsecured creditors

   sought to have a receiver appointed, and within ninety (90) days of Generex's unsecured

<div align="center">25</div>

creditors filing the Generex Involuntary Bankruptcy; and (5) negligently drafting the MKD Equity Purchase Agreement, such that it was not in conformance with the written terms the parties had agreed upon and provided Oasis Commitment Shares worth only a fraction of the value that Oasis was entitled.

96. Had NYGHF not breached its professional standards of care, the entire course of events that happened with respect to Generex would have been avoided, there would have been sufficient Collateral to recover with respect to the Generex Notes, and Oasis would have received the number and value of Commitment Shares in the MKD transaction to which it was entitled and should have received.

97. Instead, as the direct and proximate result of NYGHF's continuing negligence, Oasis suffered significant damages in excess of $11 Million, outlined above, which are continuing.

WHEREFORE, Plaintiff Oasis Capital, LLC hereby demands judgment against the Defendants, jointly and severally, for money damages, consequential damages, pre- and post-judgment interest, court costs, attorneys' fees, disgorgement of all amounts paid to Defendants, and such other and further relief as this Court deems just and proper.

**COUNT THREE**
**BREACH OF CONTRACT**
**Oasis v. Defendant Bernstein**

98. The allegations of paragraphs 1-80 are incorporated herein by reference, as if fully set forth at length herein.

99. Oasis and Defendant Bernstein entered into an agreement for the provision of legal services on behalf of Oasis in connection with the MKD, Generex, and FCTI transactions, as well as others.

100. Oasis duly performed all duties and obligations as required to be performed by it.

101. Defendant Bernstein agreed to undertake Oasis's specific request that its loans to Generex and FCTI be secured by a perfected security interest in all Generex and its Subsidiaries' assets and FCTI's available assets, and Defendants specifically promised Oasis that it would prepare the necessary documents and timely file UCC-1 financing statements to secure and perfect the Collateral for the loans and equity lines extended.

102. Defendant Bernstein also agreed to properly draft the MKD transactional documents in accordance with the written terms negotiated by Oasis, including, but not limited to, MKD's agreement to provide a specific number of Commitment Shares.

103. Defendant Bernstein breached these specific undertaking by: (1) failing to have Generex's Subsidiaries execute a document granting to Oasis a security interest in their assets, as provided for in the Generex Notes; (2) failing to file a UCC-1 financing statement on or about February 17, 2021, when the February Generex Note and Security Agreement was executed, failing to file a UCC-1 financing statement on or about July 8, 2021, when the July Generex Note and Security Agreement was executed, and failing to file the FCTI UCC-1 financing statement when the FCTI documents were executed; (3) failing to have in place procedures and processes to verify and insure that Oasis's Security Interests had been secured and timely perfected; (4) failing to independently discover his mistake in not having Generex's Subsidiaries execute documents to grant Oasis a security interest in their assets and in not filing the UCC-1 financing statements, which omissions Oasis only learned about when the Generex's unsecured creditors filed the Receivership proceeding in the Southern District of New York; (5) failing to properly draft the MKD transactional documents to properly document the parties agreement and intent with respect to the Commitment Shares Oasis was to receive; and (6) falsely assuring Oasis, despite its drafting error, that MKD would nonetheless

provide the agreed upon Commitment Shares, when in fact it refused to provide anything other than what the Equity Purchase Agreement drafted by the Defendants provided.

104. The performance of Defendant Bernstein was defective relative to the terms of the agreement with Oasis and also in failing to comport with the standards of competence and care required of the profession at large.

105. The actions of Defendant Bernstein also constituted a breach of the implied covenant of good faith and fair dealing.

106. As a direct and proximate result of Defendant Bernstein's breaches of contact, Oasis has and will likely suffer losses in excess of $11 Million.

WHEREFORE, Plaintiff Oasis Capital, LLC hereby demands judgment against the Defendants, jointly and severally, for money damages, consequential damages, pre- and post-judgment interest, court costs, attorneys' fees, disgorgement of all amounts paid to Defendants, and such other and further relief as this Court deems just and proper.

**COUNT FOUR**
**BREACH OF CONTRACT**
**Oasis v. NYGHF**

107. The allegations of paragraphs 1-80 are incorporated herein by reference, as if fully set forth at length herein.

108. Oasis engaged NYGHF to provide continuing legal services, and specifically relevant hereto, to represent it in connection with the Generex, MKD and FCTI transactions.

109. NYGHF agreed to undertake Oasis's specific request that its loans to Generex and FCTI be secured by a perfected security interest in all Generex, Generex's Subsidiaries' and FCTI's available assets, and NYGHF specifically promised Oasis that it would timely file UCC-1 financing statements for the loans and equity lines extended.

110. NYGHF also agreed to properly draft the MKD transactional documents in accordance with the written terms negotiated by Oasis, including, but not limited to, MKD's agreement to provide a specific number of Commitment Shares, as outlined in the written term sheet provided to the Defendants.

111. In addition, NYGHF was required under Florida law to perform its legal services for Oasis with the specialized skill and knowledge of law firms and attorneys who specialize in business and corporate transactions, lender representation, and secured transactions in the State of Florida.

112. Oasis duly performed all duties and obligations as required to be performed by it.

113. NYGHF breached this contractual undertaking by: (1) failing to have Generex's Subsidiaries execute a document granting to Oasis a security interest in their assets as provided for in the Generex Notes; (2) failing to file a UCC-1 financing statement on or about February 17, 2021, when the February Generex Note and Security Agreement was executed, failing to file a UCC-1 financing statement on or about July 8, 2021, when the July Generex Note and Security Agreement was executed, and failing to file the FCTI UCC-1 financing statement when the FCTI documents were executed; (3) failing to have in place procedures and processes to verify and insure that Oasis's Interests had been secured and timely perfected; (4) failing to independently discover Defendant Bernstein's mistakes in not having Generex's Subsidiaries execute a document to grant to Oasis a security interest in their assets, as provided for in the Generex Notes and in failing to file the UCC-1 financing statements, which omissions Oasis only learned about when the Generex's unsecured creditors filed the Receivership proceeding in the Southern District of New York; (5) failing to properly draft the MKD transactional documents to properly document the parties' agreement and intent with respect to the

Commitment Shares Oasis was to receive; and (6) falsely assuring Oasis, despite its drafting error, that MKD would nonetheless provide the agreed upon Commitment Shares, when in fact it refused to provide anything other than what the Equity Purchase Agreement drafted by the Defendants provided.

114. The performance of NYGHF was defective relative to the terms of the agreement with Oasis and also in failing to comport with the standards of competence and care required of the profession at large.

115. The actions of NYGHF also constituted a breach of the implied covenant of good faith and fair dealing.

116. As a direct and proximate result of Defendant NYGHF's breaches of contact, Oasis has and will likely suffer losses in excess of $11 Million.

117. Had NYGHF not breached its express and implied contractual promises, the entire disastrous course of events for Oasis and the damages it has and will continue to suffer with respect to Generex and MKD would have been avoided.

WHEREFORE, Plaintiff Oasis Capital, LLC hereby demands judgment against the Defendants, jointly and severally, for money damages, consequential damages, pre- and post-judgment interest, court costs, attorneys' fees, disgorgement of all amounts paid to Defendants, and such other and further relief as this Court deems just and proper.

## COUNT FIVE
## BREACH OF FIDUCIARY DUTY
### Oasis v. Defendant Bernstein

118. The allegations of paragraphs 1-80 are incorporated herein by reference, as if fully set forth at length herein.

119. Defendant Bernstein represented Oasis as its attorneys and thus, owed fiduciary duties to Oasis.

120. Oasis and Defendant Bernstein had a relationship whereby Oasis reposed trust and confidence in Defendants as its legal counsel.

121. Defendant Bernstein had obligations and duties to represent Oasis in a manner consistent with his common law fiduciary duties of loyalty, care and candor.

122. Defendant Bernstein owed a duty to Oasis to act in good faith, with the care that an ordinarily prudent person in a like position would exercise under similar circumstances, and in a manner that he reasonably believed to be in the best interests of Oasis.

123. Defendant Bernstein breached his fiduciary duties to Oasis by, among other things, failing to professionally and competently represent Oasis in connection with the Generex Loans, the MKD Equity line of credit transaction, and the FCTI Loan, failing to prepare and procure the execution and filing of such documents in order to secure and perfect Oasis's Security Interests therein, failing to investigate the status of the filing of the UCC-1s, failing to advise Oasis regarding its status as a non-secured creditor of Generex and FCTI, failing to properly draft the MKD transactional documents such that Oasis did receive the Commitment Shares that it had negotiated to receive, failing to advise Oasis that the MKD transactional documents did not conform to the terms included in the MKD Term Sheet, failing to correct the error or mitigate the damages arising therefrom when notified by Oasis, and assuring Oasis that MKD would provide the correct number of commitment shares despite Defendant Bernstein's error in the MKD Equity Purchase Agreement and the entire agreement provision contained therein.

124. Defendant Bernstein's breaches of fiduciary duty were the direct and proximate cause of Oasis's position in Generex's Involuntary Bankruptcy being compromised and diminished.

125. Defendant Bernstein's breaches of fiduciary duty were the direct and proximate cause of the substantial damages Oasis has incurred, outlined more fully above.

126. But for the Defendant Bernstein's breaches of fiduciary duty, Oasis would have avoided the damages it suffered and will continue to suffer.

127. As a direct result of Defendant Bernstein's breaches of fiduciary duty, Oasis suffered or will suffer losses in excess of $11 Million, as set forth above.

WHEREFORE, Plaintiff Oasis Capital, LLC hereby demands judgment against the Defendants, jointly and severally, for money damages, consequential damages, pre- and post-judgment interest, court costs, attorneys' fees, disgorgement of all amounts paid to Defendants, and such other and further relief as this Court deems just and proper.

**COUNT SIX**
**BREACH OF FIDUCIARY DUTY**
**<u>Oasis v. NYGHF</u>**

128. The allegations of paragraphs 1-80 are incorporated herein by reference, as if fully set forth at length herein.

129. Oasis and NYGHF had an attorney-client relationship whereby Oasis reposed trust and confidence in NYGHF as its legal counsel.

130. NYGHF had obligations and duties to represent Oasis in a manner consistent with their common law fiduciary duties of loyalty, care and candor.

131. NYGHF owed a duty to Oasis to act in good faith, with the care that an ordinarily prudent person in a like position would exercise under similar circumstances, and in a manner that they reasonably believe to be in the best interests of Oasis.

132. NYGHF invited Oasis's utmost trust and loyalty as it's fiduciary and, as a result, Oasis reposed the utmost of trust and loyalty in NYGHF.

133. NYGHF represented and promised to represent Oasis in accordance with its duties of loyalty, care and candor, and free of conflicting interests.

134. NYGHF intentionally and/or negligently violated the trust and confidence of Oasis and thereby materially breached their fiduciary duties to Oasis, by, among other things, failing to professionally and competently represent Oasis in connection with the Generex Loans, the MKD Equity line of credit transaction, and the FCTI Loan, failing to prepare and procure the execution and filing of such documents in order to secure and perfect Oasis's interests therein, failing to investigate the status of the filing of the UCC-1s, failing to advise Oasis regarding its status as a non-secured creditor of Generex and FCTI, failing to properly draft the MKD transactional documents such that Oasis did receive the Commitment Shares that it had negotiated to receive, failing to advise Oasis that the MKD transactional documents did not conform to the terms included in the MKD Term Sheet, failing to correct the error or mitigate the damages arising therefrom when notified by Oasis, assuring Oasis that MKD would provide the correct number of commitment shares despite Defendant Bernstein's error in the MKD Equity Purchase Agreement, and failing to adequately protect and represent the interests of Oasis.

135. As a direct and proximate result of the afore-described breaches of fiduciary duties of NYGHF, Oasis has or will incur substantial damages, in excess of Eleven Million Dollars ($11,000,000), as set forth above.

WHEREFORE, Plaintiff Oasis Capital, LLC hereby demands judgment against the Defendants, jointly and severally, for money damages, consequential damages, pre- and

post-judgment interest, court costs, attorneys' fees, disgorgement of all amounts paid to

Defendants, and such other and further relief as this Court deems just and proper.

<div align="center">

**COUNT SEVEN**
**RESPONDEAT SUPERIOR/VICARIOUS LIABILITY**
**Oasis v. NYGHF**

</div>

136. The allegations of paragraphs 1-80 are incorporated herein by reference, as if fully set

forth at length herein.

137. NYGHF is vicariously liable for and, under respondeat superior, is responsible for the

acts and omissions of its attorney, Defendant Bernstein.

138. NYGHF is liable for the acts and omissions of Defendant Bernstein, outlined above in

paragraphs 1-80.

139. Had Defendant Bernstein not breached his professional standards of care, express and

implied contracts with Oasis, and his fiduciary duties, the entire disastrous course of

events and damages that Oasis has and continues to suffer with respect to the Generex,

and MKD transactions would have been avoided.

140. Instead, as the proximate result of Defendant Bernstein's continuing negligence,

breaches of contract, and breaches of fiduciary duties, Oasis suffered significant

damages, outlined more fully above, which are continuing.


WHEREFORE, Plaintiff Oasis Capital, LLC hereby demands judgment against the

Defendants, jointly and severally, for money damages, consequential damages, pre- and

post-judgment interest, court costs, attorneys' fees, disgorgement of all amounts paid to

Defendants, and such other and further relief as this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a jury trial on all issues so triable.

<div style="margin-left:40%">

Respectfully submitted,


/s/ Evan L. Frank_____
EVAN L. FRANK, ESQ.
Bar No. 0099761
efrank@alflaw.net
Alan L. Frank Law Associates, P.C.
135 Old York Road
Jenkintown, PA 19046
T: 215.935.1000
F: 215.935.1110
Attorneys for Plaintiff Oasis Capital, LLC

</div>

December 13, 2022