**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 22-81913-CIV-CANNON/Reinhart**

**OASIS CAPITAL, LLC**,

Plaintiff,

v.

**NASON, YEAGER, GERSON,**
**HARRIS & FUMERO, P.A.**, and
**BRIAN BERNSTEIN**,

Defendants.
______________________________________/

**OMNIBUS ORDER ON CROSS MOTIONS**
**FOR SUMMARY JUDGMENT AND *DAUBERT* MOTIONS**

**THIS CAUSE** comes before the Court upon the following motions: (1) Plaintiff's Motion for Summary Judgment on liability as to all of Plaintiff's claims and three of Defendants' affirmative defenses [ECF No. 132]; (2) Defendants' Motion for Summary Judgment on all of Plaintiff's claims [ECF No. 130]; (3) Plaintiff's *Daubert* Motion to Exclude the Expert Opinion and Declaration of Charles Rennert [ECF No. 133]; and (4) Defendants' *Daubert* Motion to Exclude the Expert Opinion of Hunter Malin [ECF No. 118] (collectively, the "Motions"). The Court has reviewed the Motions, the Responses in Opposition [ECF Nos. 124, 140, 142, 143], the Replies [ECF Nos. 129, 146, 149], the statements of facts [ECF Nos. 131, 137, 138, 141, 144, 147–48], and the full record. The Court also held a hearing on the Motions [ECF No. 175]. For the reasons set forth below, Plaintiff's Motion for Summary Judgment [ECF No. 132] is **GRANTED IN PART AND DENIED IN PART**; Defendants' Motion for Summary Judgment [ECF No. 130] is **DENIED**; Defendants' *Daubert* Motion [ECF No. 118] is **DENIED**, consistent

with this Order; and Plaintiff's *Daubert* Motion [ECF No. 133] is **DENIED**, consistent with this Order.

## FACTUAL BACKGROUND

This is a legal malpractice case brought by Plaintiff Oasis Capital, LLC against Defendants Brian Bernstein, Esq. ("Bernstein"), and Nason, Yeager, Gerson, Harris & Fumero, P.A (the "Firm") (collectively, the "Defendants"). The undisputed material facts are as follows.[1] Parts I and II of this Order address the factual disputes that preclude summary judgment in favor of either party.

***

Plaintiff is a Puerto Rican LLC, whose sole managing member is Adam Long [ECF No. 137 ¶¶ 1–2]. Plaintiff invests in a wide variety of businesses, including public companies, private companies, stocks, treasuries, and commodities [ECF No. 137 ¶ 3]. Bernstein is a Florida attorney, and he is a shareholder at the Firm, which is a Florida professional association [ECF No. 137 ¶¶ 4–6; ECF Nos. 131 ¶ 33, 144 ¶ 33]. Defendants represented Plaintiff on various matters from 2018 to 2022 [ECF Nos. 131 ¶ 34, 144 ¶ 34].

At issue in this case are four transactions as to which Defendants provided legal advice to Plaintiff:

1. **Fact Inc**.: Plaintiff and Fact Inc. entered into a convertible promissory note on November 19, 2020 [ECF No. 137 ¶¶ 19–20; ECF Nos. 131 ¶ 90, 144 ¶ 90; ECF No. 131-29 (the note)].

2. **MKD**: Plaintiff and Molecular Data Inc. ("MKD") entered an equity purchase agreement on May 13, 2021 [ECF No. 137 ¶¶ 17–18; ECF No. 23-4 (the agreement)]. Plaintiff was to receive over 3 million shares of common stock [ECF No. 23 ¶¶ 42–46].

[1] These facts are drawn from the Joint Statement of Undisputed Facts [ECF No. 137], Defendants' Statement of Undisputed Material Facts [ECF No. 131], Plaintiff's Statement of Material Facts [ECF No. 138], and supporting exhibits. Facts in dispute are noted where appropriate.

3. **Generex 1**: Plaintiff entered into a securities purchase agreement with Generex Biotechnology Corporation ("Generex") in February 2021 [ECF No. 137 ¶ 7]. In connection with that agreement, Plaintiff and Generex entered into a convertible promissory note for $1,689,500 at an 8% interest rate [ECF No. 137 ¶ 8].

4. **Generex 2**: Plaintiff entered a second securities purchase agreement with Generex in July 2021 [ECF No. 137 ¶ 9]. In connection with this agreement, Plaintiff and Generex entered into a convertible promissory note for $1,085,000 at an 8% interest rate [ECF No. 137 ¶ 10].

Plaintiff alleges that, in each of these four transactions, Defendants were negligent, breached their contract with Plaintiff, and breached their fiduciary duty to Plaintiff [ECF No. 23 pp. 30–42]. The specific allegations are as follows:

- **Fact Inc. transaction**: Plaintiff alleges that Defendants failed to perfect Plaintiff's security interest by failing to file a UCC-1 financing statement [ECF No. 23 ¶ 105]. This failure, after being told to file such statement, forced Plaintiff to retain separate counsel to file it and caused Plaintiff to suffer damages [ECF No. 23 ¶¶ 106–109, 135, 145].

- **MKD transaction**: Plaintiff alleges that Defendants negligently drafted the equity purchase agreement by misstating the number of shares that Plaintiff was to receive [ECF No. 23 ¶ 47]. That misstatement—i.e., that Plaintiff was to receive about 1 million shares of common stock when it should have received over 3 million shares due to a conversion to the American Depository—caused Plaintiff to lose $198,442.39 [ECF No. 23 ¶¶ 42–53].

- **Generex 1 and 2 transactions**: Plaintiff alleges that Defendants (1) failed to file a UCC-1 financing statement to perfect those interests, and (2) failed to obtain the consent of Generex's subsidiaries to obtain a security interest in their property. These failures allegedly cost Plaintiff almost $10 million [ECF No. 23 ¶¶ 57–79, 92–103, 115].

For important context as to Plaintiff's alleged damages and Defendants' affirmative defenses, the Court provides a brief background on Generex's financial health. The first problem occurred in February 2021 when Generex defaulted on the Generex 1 agreement referenced above [ECF Nos. 131 ¶ 46, 144 ¶ 46]. Several months later, in November 2021, a judgment creditor of Generex filed a motion to appoint a receiver over Generex and its assets in the Southern District of New York [ECF Nos. 131 ¶ 69, 144 ¶ 69; ECF No. 23-8 (receivership petition)]. The petitioner cited several issues with Generex (including fraud) that caused the company to go under

[ECF No. 23-8]. That court ultimately appointed a receiver over Generex and its assets [ECF No. 131 ¶ 72; ECF No. 144 ¶ 72; ECF No. 131-23 (receivership order)]. After that, Generex's unsecured creditors separately filed an involuntary petition for bankruptcy on behalf of Generex in the United States Bankruptcy Court for the Southern District of Florida [ECF Nos. 131 ¶ 73, 144 ¶ 73; *see* Case No. 22-13166 (S.D. Fla. Bankr.); ECF No. 131-24 (petition); ECF No. 131-20 (declaration of bankruptcy trustee)]. The petition does not identify Plaintiff or its eventually filed UCC-1 financing statement [ECF Nos. 131 ¶¶ 74–75, 144 ¶¶ 74–75].[2] As explained further below, these facts concerning Generex's financial status are central to the question of damages in this case.

Defendants admit that they did not file a UCC-1 financing statement for either Generex transaction, but they dispute (1) that Plaintiff instructed them to do so and (2) that they were required to do so without Plaintiff's consent [ECF No. 131 ¶¶ 38–49, 59–65; ECF No. 144 ¶¶ 38–49, 59–65; *see also* ECF No. 138 ¶¶ 8–13, 27; ECF No. 141 ¶¶ 8–13, 27].

## PROCEDURAL HISTORY

Plaintiff filed the operative Second Amended Complaint ("SAC") in February 2023 [ECF No. 23] asserting two counts of professional negligence/malpractice (one as to Bernstein and one as to the Firm) [ECF No. 23 ¶¶ 110–126], two counts of breach of contract (same) [ECF No. 23 ¶¶ 127–146], two counts of breach of fiduciary duty (same) [ECF No. 23 ¶¶ 147–164], and one count of respondeat superior/vicarious liability against the Firm [ECF No. 23 ¶¶ 165–169]. Defendants filed an Answer asserting eleven affirmative defenses, three of which are relevant here: comparative negligence, apportionment of fault to non-parties,

[2] Plaintiff eventually filed a UCC-1 Financing Statement with the Delaware Department of State, though it is unclear which security agreement with Generex was secured or perfected by that financing statement [ECF No. 131-22].

and *in pari delicto* [ECF No. 58 pp. 12–14]. Plaintiff and Defendants each moved for summary judgment in May 2024 [ECF Nos. 130, 132]. The parties also filed cross-*Daubert* motions [ECF Nos. 118, 133]. The Court held a hearing on all four motions [ECF No. 169, 175], after which the Court advised the parties that "material disputes of fact preclude full resolution of this case as a matter of law" [ECF No. 174]. This Order follows, addressing all four ripe motions.

## LEGAL STANDARDS

**Summary Judgment**. Summary judgment is appropriate where there is "no genuine issue as to any material fact [such] that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed R. Civ. P. 56(a). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "For factual issues to be considered genuine, they must have a real basis in the record." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (internal quotation marks omitted). Speculation or conjecture cannot create a genuine issue of material fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

At summary judgment, the moving party has the burden of demonstrating that there are no genuine issues of material fact, and all factual inferences are drawn in favor of the non-moving party. *See Poer v. Jefferson Cnty. Comm'n*, 100 F.4th 1325, 1335 (11th Cir. 2024). In determining whether the movant has met this burden, the Court views the evidence in the light most favorable to the non-moving party. *Id.* And all reasonable inferences must be drawn in the non-movant's favor. *Id.* ("[I]nferences that are supported by only speculation or conjecture will not defeat a summary judgment motion."). Once the movant's initial burden is met, "'the burden shifts to the

nonmoving party to bring the court's attention to evidence demonstrating a genuine issue for trial.'" *Id.* (quoting *Paylor v. Hartford Fire Ins.*, 748 F.3d 1117, 1121 (11th Cir. 2014)). A non-moving party's failure to produce evidence for an essential element of a claim warrants summary judgment in favor of the moving party. *Celotex Corp.*, 477 U.S. at 323.

***Daubert.*** Under Federal Rule of Evidence 702, an expert witness may testify if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; *United States v. Frazier*, 387 F.3d 1244, 1259–60 (11th Cir. 2004) (en banc).

The Eleventh Circuit "requires trial courts acting as gatekeepers to engage in a 'rigorous three-part inquiry.'" *Hendrix v. Evenflo Co*., 609 F.3d 1183, 1194 (11th Cir. 2010) (quoting *Frazier*, 387 F.3d at 1260)). In doing so, the district court must assess whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (footnote omitted). The proponent of expert testimony bears the burden of establishing admissibility. *Frazier*, 387 F.3d at 1244.

## DISCUSSION

This Order proceeds in three parts: Plaintiff's Motion for Summary Judgment [ECF No. 132],[3] Defendants' Motion for Summary Judgment [ECF No. 130],[4] and the parties' *Daubert* motions [ECF Nos. 118, 133].

### I. Plaintiff's Motion for Summary Judgment is granted in part and denied in part.

Plaintiff seeks summary judgment on liability as to all counts in the SAC and as to three of Defendants' eleven affirmative defenses [ECF No. 132 pp. 11–20]. Plaintiff's argument on liability hinges solely on the assertion that New York law applies to the Generex transactions [ECF No. 132 pp. 6–11]. Plaintiff argues that because New York law considers a failure to file a UCC-1 financing statement *per se* malpractice, Defendants are liable because they did not file one [ECF No. 132 pp. 6–9]. Plaintiff also argues that even if Florida law applies instead of New York law, the Court "must still determine whether the Florida courts would apply a per se malpractice rule" [ECF No. 132 pp. 9–11]. As to Defendants' affirmative defenses, Plaintiff first argues that the comparative-negligence defense should be stricken under *Tarleton v. Arnstein & Lehr*, 719 So. 2d 325, 331 (Fla. Dist. Ct. App. 1998), which holds that a client "cannot be found to be comparatively negligent for relying on an attorney's erroneous legal advice or for failing to correct errors of the attorney which involve the exercise of professional expertise" [ECF No. 132 pp. 11–12]. Nor can Defendants assert a comparative-negligence defense, Plaintiff argues, because Generex's default was the hazard against which the UCC-1 financing statements were supposed

[3] On Plaintiff's Motion for Summary Judgment, the Court views the evidence and all factual inferences arising in the light most favorable to Defendants [ECF No. 132].

[4] On Defendants' Motion for Summary Judgment, the Court views the evidence and all factual inferences in the light most favorable to Plaintiff [ECF No. 130].

to protect [ECF No. 132 pp. 12–14].[5] Plaintiff lastly argues that the *in pari delicto* defense does not apply because Plaintiff and Defendants did not violate the law in cooperation with each other [ECF No. 132 pp. 14–18].

Defendants respond by arguing that (1) Plaintiff has already taken the position in this litigation that Florida law, not New York law, applies, thus precluding Plaintiff from raising the new theory at this stage [ECF No. 140 pp. 2–5];[6] (2) Florida law applies anyways, and the Court need not and should not adopt a per-se legal malpractice rule [ECF No. 140 pp. 5–10]; and (3) there are genuine issues of material fact as to the comparative negligence and *in pari delicto* affirmative defenses that preclude summary judgment [ECF No. 140 pp. 10–20].

The Court concludes that Plaintiff's summary judgment motion is denied insofar as it seeks to find Defendants liable under a per-se legal malpractice rule under New York law because Florida law applies. The Court also concludes that genuine disputes of material fact exist as to Defendants' comparative-fault affirmative defense, precluding summary judgment on that defense. The Court lastly concludes that the *in pari delicto* affirmative defense is inapplicable here, so summary judgment in favor of Plaintiff on that defense is appropriate.

**A. Florida law, not New York law, applies to Plaintiff's claims, warranting denial of Plaintiff's motion for summary judgment on liability.**

It is at least objectionable that Plaintiff has timely raised a choice-of-law argument in this case, but even if it has, the Court concludes that Florida law, not New York law, applies. "[A] party waives its opportunity to rely on non-forum law where it fails to timely provide—typically in its complaint or the first motion or response when choice-of-law matters—the sources of non-

---

[5] For this same reason, Plaintiff argues that apportionment of fault to non-parties (Defendants' ninth affirmative defense) is inappropriate [ECF No. 132 pp. 19–20].

[6] *See* ECF Nos. 1 (original complaint), 21 (amended complaint), 23 (SAC), 17 (response to Defendants' motions to dismiss), 25 (same).

forum law on which it seeks to rely." *Sun Life Assurance Co. of Can. V. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1208 (11th Cir. 2018). Conflict-of-law questions in Florida are resolved "according to the 'most significant relationship test' outlined in the Restatement (Second) of Conflicts of Laws." *Grupo v. Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007). That test requires the Court to consider "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980) (quoting Restatement (Second) of Conflict of Laws § 145).

All four factors in the "most significant relationship test" weigh in favor of applying Florida law. Defendant Bernstein is a Florida lawyer working for the Firm, which is a Florida professional association with its principal place of business in Florida [ECF No. 137 ¶ 5; ECF Nos. 131 ¶ 33, 144 ¶ 33]. Defendants rendered their professional services in Florida, as alleged in Plaintiff's Complaint [ECF No. 23 ¶¶ 34, 36]. Additionally, Generex's bankruptcy proceeding is in the Southern District of Florida bankruptcy court [ECF No. 131-24 (Petition for Involuntary Bankruptcy as to Generex)]. Finally, policy interests overwhelmingly favor Florida as the choice of law, because Florida has a strong interest in addressing the conduct of attorneys practicing or representing clients within its jurisdiction. *See Goldfarb v. Va. State Bar*, 421 U.S. 773, 792 (1975) ("The interest of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been officers of the courts.") (internal quotations omitted).

Any connection to New York is too attenuated. The strongest basis for applying New York law is the fact that the convertible promissory notes in each Generex transaction are governed by

New York contract law [ECF No. 132 p. 8; ECF No. 23-5 (Generex 1), 23-6 (Generex 2)]. However, those notes are between Plaintiff and Generex, not Plaintiff and *Defendants*. The conflict-of-law inquiry is one as to the "rights and liabilities *of the parties*," and the Court must determine which state's law, "*with respect to that issue*, has the most significant relationship" to the negligence at issue. *Bishop*, 389 So. 2d at 1001 (quoting Rest. (2d) of Conflicts of Law § 145) (emphases added). This is a legal malpractice suit between Plaintiff and Defendants. The Court is not persuaded that a contract between Plaintiff and a third party—even knowing Defendants were retained to assist in that contract—controls the choice-of-law analysis here.

Plaintiff's insistence that this Court *must*, for the first time, determine whether Florida courts would or should apply a per se malpractice rule is unpersuasive. Because the Court is interpreting Florida law, it must "look first for case precedent from Florida's highest court—the Florida Supreme Court." *SE Property Holdings, LLC v. Welch*, 65 F.4th 1335, 1342 (11th Cir. 2023). If that Court has not spoken, the Court "must predict how the highest court would decide the case," *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018), and in making that prediction, the Court is "bound to adhere to the decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise," *Provau v. State Farm Mut. Auto Ins. Co.*, 772 F.2d 817, 820 (11th Cir. 1985).

Plaintiff has provided no authority from the Florida Supreme Court or Florida's intermediary appellate courts suggesting that the Florida Supreme Court would adopt a per se malpractice rule [ECF No. 132 pp. 9–11 (citing no Florida cases but referring the Court to New York, Georgia, and Illinois caselaw); *see* ECF No. 175 pp. 6–7 (Plaintiff's counsel acknowledging that Florida "has not spoken on the issue")]. A legal malpractice action in Florida has three elements: "1) the attorney's employment; 2) the attorney's neglect of a reasonable duty; and 3) the

attorney's negligence as the proximate cause of loss to the client." *Larson & Larson, P.A. v. TSE Indus., Inc.*, 22 So. 3d 36, 39 (Fla. 2009). Florida courts have routinely applied this three-pronged approach, which has been "part of Florida common law since at least 1973." *Washington v. Yates*, 337 So. 3d 378, 379 (Fla. Dist. Ct. App. 2022). Given the caselaw on legal malpractice in Florida—and without any discernible indication that the Florida Supreme Court would adopt a per se rule—the Court declines to commandeer Florida law on this issue and adopt such a rule for an attorney's failure to file a UCC-1 financing statement. Whether the Florida Supreme Court or Florida intermediate appellate courts ultimately elect to adopt a per se rule in this context is a matter best left for those courts, and this Order should not be read as taking a substantive position on the merits or demerits of such a rule.[7]

The result of this conclusion is that Plaintiff's summary judgment motion on liability is due to be denied on all claims, as it hinges on applying a per se legal malpractice rule [*see* ECF No. 175 pp. 9–10 (Plaintiff's counsel acknowledging that a trial would be required in the absence of the Court adopting a per se negligence rule)].[8] The Court is then left to apply Florida's three-

[7] It appears the closest the Florida Supreme Court has come to addressing the issue of per se legal malpractice came in *Pressley v. Farley*, 579 So. 2d 160 (Fla. Dist. Ct. App. 1991), an authority cited by Defendants [ECF No. 140 p. 9; ECF No. 175 pp. 15–16]. *Id.* at 161, *cause dismissed*, 583 So. 2d 1036 (Fla. 1991). *Pressley* involved a claim for legal malpractice by a client against her former attorney, where the allegations "were based in significant part on claimed violations of the Rules of Professional Conduct." *Id.* at 161. In affirming the trial court's dismissal of the complaint for failure to state a claim, the First District Court of Appeal of Florida held that "[a] violation of the Rules of Professional Conduct does not create a legal duty on the part of the lawyer nor constitute negligence per se, although it may be used as some evidence of negligence." *Id.* (internal citation omitted). While Plaintiff's claims in this case concern substantive acts of alleged negligence—not pled violations of the Rules of Professional Conduct—*Pressley* at a minimum reflects an instance in which the Florida Supreme Court had an opportunity to adopt a per se rule in the legal malpractice context but did not do so.

[8] Plaintiff's Motion centers on the Florida v. New York law question, without distinguishing the result of that determination on a claim-by-claim basis [*see* ECF No. 132]. The Court therefore evaluates Plaintiff's claims together, as offered by Plaintiff. Beyond Plaintiff's position as to New

element negligence test for legal malpractice, which produces disputed questions of fact related to Defendants' duty to file the UCC-1 form as pled in the SAC, along with competing views on breach and causation.

The Court turns next to Plaintiff's arguments for summary judgment on three of Defendants' affirmative defenses.

**B. Plaintiff's motion for summary judgment is denied as to Defendants' comparative-negligence affirmative defense but granted as to Defendants' *in pari delicto* affirmative defense.**

For the reasons explained further below, the Court determines that genuine disputes of material fact exist and preclude summary judgment on Defendants' comparative-negligence affirmative defense, but summary judgment is appropriate on Defendants' *in pari delicto* affirmative defense because that doctrine does not apply here. The Court addresses each in turn.

**1. Genuine disputes of material fact preclude summary judgment on Defendants' comparative-negligence affirmative defense.**

While it is true that a client generally does not have a duty to correct a lawyer's errors in document preparation, as established in *Tarleton*, 719 So. 2d at 331, there are genuine factual disputes over Plaintiff's own alleged negligence in (1) the MKD transaction due to its own purported drafting of that agreement; and (2) the Generex transactions due to Plaintiff's acceptance of the risk to conduct business with Generex despite Generex's state of financial collapse [ECF No. 58 p. 12]. These factual disputes preclude summary judgment on Defendants' defense of comparative negligence, which rests on the notion that Plaintiff engaged in conduct which fell below "the standard to which [it] should conform for his own protection," Restatement (Second) of Torts § 463 (1965), and which itself would require proof of the elements of traditional

York law, Plaintiff makes no other substantive argument that judgment as a matter of law is warranted in its favor on its affirmative claims.

negligence (duty, breach, causation, damages), *see Drew v. Tenet St. Mary's, Inc.*, 46 So. 3d 1165, 1167 (Fla. Dist. Ct. App. 2010).

First, as to the MKD transaction, Plaintiff insists that Defendants committed malpractice by overlooking a typographical error [ECF No. 132 pp. 11–12]. But at the same time, Plaintiff admits that all communications about the MKD transaction were between Long and MKD, that Bernstein was not involved in the negotiations of the equity purchase agreement, and that Bernstein did *not* draft the term sheet between Plaintiff and MKD [ECF Nos. 141 ¶¶ 36–38, 147 ¶¶ 36–38; ECF No. 141-1 (Bernstein declaration)]. Also, Defendants reiterated at the hearing that they did not have sufficient information about Long's communications with MKD when they provided legal advice to Plaintiff [ECF No. 175 p. 43]. This record evidence reveals genuine disputes over the scope of Defendants' involvement in the MKD transaction. Determinations of whose story is more credible, based on whose purported sequence of events, are better suited for the jury.

Second, as to Plaintiff's alleged comparative negligence in the Generex transactions, the Court likewise agrees with Defendants that several genuine disputes of fact exist. To be sure, "[a] client cannot be found to be comparatively negligent for relying on an attorney's erroneous legal advice or for failing to correct errors of the attorney which involve the exercise of professional expertise." *Tarleton*, 719 So. 2d at 331. But Defendants argue that Plaintiff was comparatively negligent *before* entering into either Generex transaction—in other words, Plaintiff's risky decision to transact with Generex was the cause of its damages, not Defendants' failure to file the UCC-1 financing statement [*see* ECF No. 140 pp. 15–16]. Defendants point to Plaintiff's failure to conduct due diligence on Generex, Plaintiff's contracting with Generex a second time after Generex defaulted the first time, and Plaintiff's knowledge of Generex's previous breach-related lawsuits [ECF No. 140 pp. 15–16]. The Court finds it necessary for a jury to consider these

competing arguments as to when and how each side was allegedly negligent. There is no indication that the *Tarleton* rule excuses potential negligence by Plaintiff in contracting with Generex in the first place. *See MasTech N. Am., Inc. v. Morakis*, 288 So. 3d 685, 688 (Fla. Dist. Ct. App. 2019) ("Where there is evidence which supports an inference of comparative fault on the part of the plaintiff, the issue of comparative negligence should be submitted to the jury."). At bottom, the Court is not persuaded that, as a matter of law, Defendants' failure to file a UCC-1 was only cause of Plaintiff's damages. Thus, Plaintiff's motion is denied insofar as it seeks summary judgment on Defendants' comparative negligence affirmative defense.[9]

**2. Summary judgment is appropriate regarding Defendants' *in pari delicto* affirmative defense because that doctrine does not apply here.**

The Court agrees with Plaintiff that Defendants' *in pari delicto* affirmative defense is inapplicable in this case. "The common law defense of *in pari delicto* refers to the principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." *Earth Trades, Inc. v. T&G Corp.*, 108 So. 3d 580, 583 (Fla. 2013) (internal quotation omitted). This defense requires that "the parties must participate in the same wrongdoing" and be "[e]qually at fault." *Id.*; *see Perry v. Turner*, 365 So. 3d 1222, 1225 (Fla. Dist. Ct. App. 2023) (explaining that the *in pari delicto* defense "is 'grounded on two premises: first, that courts should not lend their good offices to mediating disputes among wrongdoers; and second, that denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality.'" (quoting *Earth Trades*, 108 So. 3d at 583)).

[9] It is unclear whether Plaintiff makes a separate argument for summary judgment on Defendants' apportionment-of-fault affirmative defense [ECF No. 58 p. 14]. *See* Fla. Stat. § 768.81. Regardless, the Court concludes—for the same reasons summary judgment is unwarranted on Defendants' comparative fault defense—that Plaintiff has not shown an absence of genuine disputes of material fact warranting judgment as a matter of law on Defendants' apportionment-of-fault affirmative defense [*see* ECF No. 132 pp. 18–20]. How this defense ultimately forms its way into jury instructions during trial remains to be seen.

Defendants assert that Plaintiff's failure to register as a securities dealer in violation of federal law prohibits Plaintiff from recovering damages from Defendants in this legal malpractice action [ECF No. 140 p. 19]. But as discussed at the hearing, there is simply no indication that Plaintiff's SEC-violative conduct is the same wrongdoing as the alleged legal malpractice at issue in this case [ECF No. 175 pp. 55–65]. Plaintiff's alleged wrongdoing is that Defendants failed to file a UCC-1 financing statement; Defendants' alleged wrongdoing is that Plaintiff violated federal securities law. The two are not "the same wrongdoing," *Earth Trades, Inc.*, 108 So. 3d at 583, so the Court finds that the *in parti delicto* defense is inapplicable in this case.

* * *

In sum, Plaintiff's Motion for Summary Judgment [ECF No. 140] is **DENIED** as to Plaintiff's claims; **DENIED** as to Defendants' comparative-negligence defense; and **GRANTED** as to Defendants' *in pari delicto* defense because it does not apply this case.

**II. Defendants' Motion for Summary Judgment is denied.**

Defendants seek summary judgment on all counts, arguing that (1) Plaintiff has not produced sufficient evidence to establish that Defendants' failure to timely file a UCC-1 proximately caused Plaintiff's losses; (2) the alleged $11 million in damages is speculative, and should be limited to $2.4 million because of an order from the bankruptcy court in which Generex's assets were sold for $3.3 million and Plaintiff was deemed an unsecured creditor of Generex; and (3) Plaintiff's expert Hunter S. Malin, Esq. is unqualified, and without an expert, Plaintiff cannot establish that Defendants breached the standard of care [ECF No. 130].

Plaintiff argues in response that (1) Generex's creditors stated in open court that Plaintiff's late UCC-1 filing was a motivation for petitioning for Generex's involuntary bankruptcy, which

proves proximate causation;[10] (2) Plaintiff can prove collectability because it has submitted a fair-market valuation of Generex's subsidiaries at $500 million; and (3) even if Maylin is excluded, Plaintiff would be able to prove its case because failing to file the UCC-1 is clearly malpractice [ECF No. 143].

**A. Genuine disputes of material fact exist as to whether Defendants' failure to file a UCC-1 form caused Plaintiff damages.**

The Court concludes that genuine disputes of material fact exist as to whether Defendants' alleged negligence in failing to file a UCC-1 caused—to whatever degree—Plaintiff's damages. Drawing all inferences in favor of Plaintiff, Plaintiff's UCC-1 filing had at least some impact on its ability to recover damages in Generex's bankruptcy proceeding [*See* ECF No. 23-10 p. 10 (transcript from bankruptcy court hearing) ("Oasis has perfected its lien within the last 90 days, which, under the bankruptcy code, could potentially be avoided, which would render Oasis, after motion practice, [a] general unsecured creditor and in line with essentially everyone else."); *id.* p. 13 ("[T]here is now a secured creditor who steps in with a late perfected claim . . .")]. Further, the bankruptcy trustee's motion for summary judgment in the bankruptcy proceeding explains how Plaintiff's recovery fluctuates between $2.7 million and $302,500 depending on whether Oasis is treated as a secured or unsecured creditor [ECF No. 28-2 p. 7 (arguing why Oasis' perfection of its security interest should be avoidable under 11 U.S.C. § 547(b))]. Despite Defendants' insistence that "the statements and arguments of counsel are not evidence," the Court is obliged to consider the entire factual record compiled on summary judgment, which includes

[10] Plaintiff's bottom line is that if Defendants filed a UCC-1, it would be treated as a secured creditor of Generex, and it could receive approximately $2.75 million; whereas if Plaintiff is treated as an unsecured creditor, it will only receive a pro rata share of about $302,500 [ECF No. 143 p. 3; *see* ECF No. 28-2 p. 7 (trustee's motion for summary judgment in bankruptcy proceeding)].

extensive citations to Generex's bankruptcy proceeding [ECF No. 149 p. 2 (citing *United States v. Volois*, 915 F.3d 717, 726 (11th Cir. 2019)].[11] And Generex's bankruptcy proceeding is relevant in this case. Viewed in the light most favorable to Plaintiff, the record evidence of Generex's bankruptcy proceeding creates a factual dispute over the effect of Defendants' failure to file a UCC-1 to perfect Plaintiff's security interest with Generex. The Court cannot say that, as a matter of law, Defendants' failure to file the form was not the cause of *any* of Plaintiff's alleged damages.

**B. Genuine disputes exist as to the amount of Plaintiff's potential damages.**

The Court similarly concludes that genuine disputes of material fact exist as to whether Plaintiff's alleged $11 million damages figure is speculative. Defendants assert that the ability for Plaintiff to collect $11 million relies on the assumption that Plaintiff would have been able to collect that amount from Generex [ECF No. 130 p. 9]. And because Generex was experiencing financial trouble, had a receiver appointed to prohibit it from selling or transferring its own property, and was forced into involuntary bankruptcy, Defendants argue that it is completely speculative whether Generex could continue as a "going concern" [ECF No. 130 pp. 10–11].[12] Plaintiff argues in response that the amount of its bankruptcy distribution will be lower as an unsecured creditor rather than as a secured creditor (which it would have been if Defendants had filed the UCC-1), thus showing at least some damages; and further, that it produced evidence that one of Generex's subsidiaries had a market value of $500 million, thus showing that Plaintiff could

[11] In any event, the *Volois* case cited by Defendants concerns whether statements by a prosecutor at trial were admitted into evidence. 915 F.3d at 726. That rule does not prohibit the Court from considering Generex's bankruptcy proceedings for purposes of reviewing the summary judgment record in this case.

[12] As Defendants explain in their brief, a "going concern" is a presumption that a company will continue its operations into the foreseeable future without the necessity of liquidation or significant downsizing [ECF No. 130 pp. 6–7 n.4].

recover the $11 million it seeks [ECF No. 143 pp. 4–5; ECF No. 144-7 (fair market value analysis); ECF No. 144-8 (appraisal)].

The burden is "ordinarily . . . on the plaintiff in a legal malpractice action to prove the collectability of the judgment which would have been obtained . . . but for the attorney's negligence, in order to establish the amount of damages proximately caused by the negligence." *Fernandes v. Barrs*, 641 So. 2d 1371, 1376 (Fla. Dist. Ct. App. 1994). This burden is in place to "prevent[] a windfall to the client by preventing him from recovering more from the attorney than he could have actually obtained from the tortfeasor in the underlying action." *Id.* However, "when the negligence of the attorney makes it impossible to prove the collectability of the claim, the burden should be shifted to the attorney to prove that the judgment or any portion thereof was uncollectible." *Id.*

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has adequately met its burden by submitting sufficient evidence of collectability. Faced with competing evaluations of Generex's financial wellbeing, but taking all inferences in Plaintiff's favor, the Court finds that the questions of how much Plaintiff could or should recover are genuinely in dispute "such that a reasonable jury could return a verdict for" Plaintiff. *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016) (alteration adopted and quotation omitted). Questions related to the credibility and accuracy of Plaintiff's proffered fair-market analysis, Defendants' proffered evidence as to Generex's financial wellbeing, the timing of UCC-1 filings, and the effect of such timing on monetary values are factual questions not amenable to resolution as a matter of law [*see* ECF No. 130 pp. 8–11 (citing adverse effects of covid-19; 8-k,

10-Q, and 10-K reports; and the receivership); ECF No. 143 pp. 4–5 (citing the fair-market analysis); ECF No. 149 pp. 6–8].[13]

**C. The Court declines to exclude Plaintiff's expert, so Defendants' final summary judgment argument is denied.**

Defendants' final summary-judgment argument—that Plaintiff's expert should be excluded, and that once excluded, Plaintiff cannot establish a breach of the standard of care—relies on the Court's determination of Defendants' *Daubert* motion to exclude Plaintiff's expert Malin [ECF No. 130 pp. 13–14]. For the reasons stated below, the Court denies Defendants' motion to exclude Plaintiff's expert, so Defendants' argument here on summary judgment is also denied [*see* ECF No. 175 pp. 66–67 (defense counsel agreeing that if Malin is not excluded, then its argument here on summary judgment fails)].

* * *

Defendants' Motion for Summary Judgment [ECF No. 130] is **DENIED** because genuine disputes of material fact exist as to causation and collectability, and the Court declines to exclude Plaintiff's expert as reasoned below.

## III. The cross *Daubert* motions are denied.

The Court determines that the cross-*Daubert* motions are essentially attacks on the weight that should be given to the experts' testimony rather than meritorious challenges to their threshold admissibility under *Daubert*. The parties may probe any possible shortfalls in the expert opinions

[13] Defendants' argument that Plaintiff's damages are limited by the bankruptcy order is likewise inappropriate to decide at this posture [ECF No. 130 pp. 12–13]. Defendants make this argument in the alternative, should the Court determine that Plaintiff's purported damages are *not* speculative. But since the Court sees genuine disputes of fact as to Plaintiff's potential collectability, the Court similarly determines that it is improper at this juncture to impose a cap on any potential damages. This Order does not preclude Defendants from continuing to challenge Plaintiff's asserted damages at trial or post-trial, or from challenging Plaintiff's evidence in accordance with the Federal Rules of Evidence.

via the conventional means of cross-examination and contrary evidence. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). But neither *Daubert* motion persuades the Court to exclude the disputed testimony altogether. "[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). That principle has force here, as detailed below, where the parties have proffered dueling experts on the underlying reasons for and against filing a UCC-1, including the possible strategic benefits of not filing such a form [ECF No. 175 p. 92].

**A. Defendants' *Daubert* motion is denied.**

Defendants make three *Daubert* arguments for the exclusion of Plaintiff's expert witness Malin: (1) Malin's damages and causation opinions are speculative; (2) Malin is not qualified because he has never negotiated a convertible note transaction; and (3) Malin's opinions lack a reliably methodology and are not helpful because he admits that his calculations are based on speculation and assumptions [ECF No. 118].[14]

In response, Plaintiff commits seven pages to going line-by-line through Rennert's (Defendants' expert's) three-page declaration [ECF No. 118-1], arguing that it should be stricken because it goes beyond Rennert's original expert report and is therefore an impermissible late disclosure [ECF No. 124 pp. 5–11]. Plaintiff then argues that (1) Malin is qualified given his

[14] Defendants attached eight exhibits to their *Daubert* motion: a declaration of Charles Rennert (their expert) [ECF No. 118-1]; Rennert's expert report [ECF No. 118-2]; Generex's 2020 Form 10-K [ECF No. 118-3]; the equity purchase agreement between Plaintiff and Generex [ECF No. 118-4]; Malin's expert report [ECF No. 118-5]; Malin's deposition transcript [ECF No. 118-6]; an affidavit of Mark Parisi (Defendants' rebuttal expert) [ECF No. 118-7]; and the equity purchase agreement between Plaintiff and MKD [ECF No. 118-8].

experience in creditors' rights, drafting secured transactions, bankruptcy, and filing UCC-1's [ECF No. 124 pp. 15–17]; and (2) Malin's testimony is reliable and helpful because he will explain the lawyer's typical duties in this setting based on his experience [ECF No. 124 pp. 17–19]. Lastly, Plaintiff concedes that "Malin is not proffered as an expert on damages" [ECF No. 124 p. 18].

In light of Plaintiff's concession that Malin "is not proffered as an expert on damages" [ECF No. 124 p. 18], which Plaintiff's counsel confirmed at the hearing [ECF No. 175 p. 81 (Q: "Is it true that you withdrew Malin as an expert on damages?" A: "I don't know that we ever submitted Mr. Malin as an expert on damages.")], that portion of Defendants' *Daubert* motion is denied as moot and/or granted (to the extent a dispute on this point remains). The Court is left to evaluate whether Malin is qualified to render opinions on the Generex and MKD transactions and whether his opinions are sufficiently reliable and non-speculative to clear *Daubert* and Rule 702.

The Court finds that Malin's legal experience sufficiently qualifies him to give the expert opinion on the obligation to file a UCC-1 [ECF No. 118-5 p. 4 (Malin's opinion)]. Malin has experience in drafting secured transactions, filing UCC-1s, creditors' rights, and bankruptcy [ECF No. 118-6 pp. 12, 132, 210–12]. It is true that, in Malin's deposition, he conceded that he has never filed a "convertible note" [ECF No. 118-6 p. 32]. But he explained that, "regardless of how the note is described or the type of note, . . . in secured transactions[,] a UCC-1 should be filed to perfect the security interest" [ECF No. 118-6 pp. 32–32]. Defendants are free to challenge Malin's reasoning at trial, but the Court is not persuaded that Malin is wholesale unqualified to give an opinion because of his lack of exact experience. *Cf. Furmanite Am., Inc. v. T.D. Williamson*, 506 F. Supp. 2d 1126, 1129 (M.D. Fla. 2007) ("An expert is not necessarily unqualified simply because her experience does not precisely match the matter at hand.").

As to Defendants' reliability and helpfulness arguments, the Court determines that such arguments—stripped of any calculation as to damages since Malin was withdrawn as a damages expert—are repackaged qualification arguments. For example, Defendants cite snippets from Malin's deposition in which he was questioned about his opinion that UCC-1 filings are routine, but then Defendants question how Malin was qualified to give that opinion if he had never actually filed a UCC-1 [ECF No. 118 pp. 12–13]. The remainder of Defendants' arguments as to reliability and helpfulness go to the weight and credibility of Malin's testimony [*E.g.*, ECF No. 118 p. 13 (asserting that Malin was "not even aware of any cons to filing the UCC-1 financing statement"); p. 13 (arguing that, contrary to Malin's opinion, "there are strategic reasons why a UCC-1 financing statement would not be filed")]. Plaintiff has adequately proffered Malin to testify that a "competent transactional lawyer whose client is supposed to have a security interest" would have executed the required documents [ECF No. 124 p. 19].

**B. Plaintiff's *Daubert* motion is denied, but Plaintiff's argument to strike as untimely a portion of Rennert's opinion as stated in his declaration is granted in part and denied in part.**

Plaintiff seeks to exclude the testimony of Defendants' expert Rennert on two principal grounds: first, that Rennert's declaration [ECF No. 118-1], filed by Defendants in support of Defendants' *Daubert* motion, was filed too late and does not overlap with Rennert's expert report [ECF No. 118-2]; and second, that Rennert's opinions conflict with Florida law on comparative fault and the Florida Bar rules [ECF No. 133]. Plaintiff also seeks to exclude Defendants' rebuttal expert Parisi, a certified public accountant, from testifying on matters outside Parisi's initial report [ECF No. 133 pp. 3–4 (referencing a late declaration by Parisi in support of Defendants' *Daubert* motion); ECF No. 118-7].

Defendants counter that Plaintiff's motion is more akin to a motion in limine than a *Daubert* motion [ECF No. 142 p. 3]. In any event, Defendants submit that Rennert's and Parisi's

declarations should be permitted because they provide context in support of Defendants' *Daubert* motion rather than supplement their respective expert reports [ECF No. 142 pp. 3–5]. Defendants also argue that Rennert's opinions as to the MKD transaction, the UCC-1 filing, and confidentiality are sufficient under *Daubert* and can be challenged by Plaintiff at trial.

For the reasons explained below, the Court largely disagrees with Plaintiff but finds that a small portion of Rennert's declaration should be stricken because it offers an opinion that was not properly disclosed during discovery.

**1. Only paragraph three of Rennert's declaration is stricken.**

Defendants' expert Rennert was properly disclosed as an expert and provided his report under Rule 26 [ECF No. 133-1]. *See* Fed. R. Civ. P. 26(a)(2). Defendants also properly served both Rennert's and Parisi's rebuttal opinions in accordance with the Court's Scheduling Order [ECF No. 45; ECF No. 133-2 (Rennert's rebuttal report); ECF No. 133-3 (Parisi rebuttal report)].[15]

Notwithstanding these timely disclosures, Plaintiff says this Court should strike Rennert's and Parisi's declarations filed in support of Defendants' *Daubert* motion because they materially exceed the opinions offered by those experts in their timely disclosed reports—and thus warrant exclusion under Rule 37(c) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 26(a)(2)(E) (requiring parties to supplement their expert disclosures "when required under Rule 26(e)"); Fed. R. Civ. P. 26(e)(2) (providing that "additions or changes to [information included in an expert's report] must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due"); Fed. R. Civ. P. 37(c)(1) (barring use of undisclosed information unless failure is "substantially justified or is harmless").

[15] Plaintiff did not depose Rennert or Parisi [ECF No. 142 p. 4].

The Court mostly disagrees with Plaintiff's motion-to-strike request. Everything in Rennert's declaration except for Paragraph 3 sufficiently relates to Rennert's original and rebuttal reports, both of which plainly concern the Generex transactions and whether Defendants' failure to file a UCC-1 was problematic [ECF No. 133-1; ECF No. 118-1]. The opinion in Paragraph 3, however, has no apparent relation to Rennert's expert report (nor have Defendants identified one) [*see* ECF No. 142 pp. 3–5]. Paragraph 3 says that "Oasis was motivated to acquire the [Generex] Notes because [they] were a vehicle for Oasis to receive discounted stock" [ECF No. 118-1]. The paragraph goes on to describe Oasis's "strategy" [ECF No. 118-1]. These statements do not appear in or discernibly relate to the opinions in Rennert's expert report, and Plaintiff is generally correct that Rennert is not qualified to render an opinion about Plaintiff's subjective motivation in acquiring the subject notes [*see* ECF No. 133 pp. 7–8]. The Court thus grants Plaintiff's request to strike the opinion in Paragraph 3 of Rennert's declaration, to the extent Defendants intended to offer that opinion at trial through Rennert, but otherwise denies Plaintiff's motion as to Rennert. Plaintiff's remaining challenge to Rennert's substantive opinions and the correctness of those opinions under relevant law is better suited for trial.

**2. None of Parisi's declaration is stricken.**

The Court denies Plaintiff's request to strike Parisi's declaration. It is undisputed that Parisi's rebuttal expert report was timely disclosed [ECF No. 133 p. 4]. Plaintiff's only argument is that Parisi should be precluded from testifying about the subjects of his declaration because it was filed late [ECF No. 133 pp. 3–4]. But Plaintiff offers no substantive argument as to why the declaration is improper or strays impermissibly beyond Parisi's timely disclosed rebuttal expert report.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Summary Judgment [ECF No. 132] is **GRANTED IN PART** and **DENIED IN PART** in accordance with this Order.
2. Defendants' Motion for Summary Judgment [ECF No. 130] is **DENIED**.
3. Defendants' *Daubert* Motion [ECF No. 118] is **DENIED**, consistent with this Order. *See supra* p. 21.
4. Plaintiff's *Daubert* Motion [ECF No. 133] is **DENIED** to the extent it seeks to exclude the opinions of Defendants' experts Rennert and Parisi as untimely and/or unreliable, but the opinion in paragraph 3 of Rennert's declaration is stricken as untimely, for the reasons stated in this Order. Parisi may testify as a rebuttal expert in line with his report, provided his testimony rebuts the opinion of Plaintiff's expert, Malin.
5. A hearing on the pending motions *in limine* [ECF Nos. 156, 158] remains scheduled for **January 16, 2025, at 9:30 AM**. Trial remains specially set to begin on **March 31, 2025, at 8:30 AM** in the Fort Pierce Division, with a final pretrial conference set for **Thursday, March 20, 2025, at 9:30 AM**.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida this 15th day of January 2025.

**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record